Joshua S. Force (State Bar No. 176383)
**SHER GARNER CAHILL RICHTER KLEIN
    & HILBERT, L.L.C.**
909 Poydras Street, Twenty-Eighth Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
Email: jforce@shergarner.com

J. Robert Renner (State Bar No. 148587)
**DUANE MORRIS LLP**
865 S. Figueroa Street, Suite 3100
Los Angeles, California 90017-5450
Telephone:  213-689-7400
Facsimile:  213-689-7401
Email: rrenner@duanemorris.com

Attorneys for Archon Information
Systems, L.L.C. and Bryan P. Barrios

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEN RUIZ ARI<br><br>Plaintiff,<br><br>v.<br><br>ARCHON INFORMATION SYSTEMS, LLC, a Delaware Limited Liability Company, BRYAN P. BARRIOS, an individual, and DOES 1 through 100, inclusive<br><br>Defendants. | **Case Number: Case Number: 5:10-cv-01572-JHN-OPx**<br><br>**DEFENDANTS ARCHON INFORMATION SYSTEMS, LLC AND BRYAN P. BARRIOS'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER TO A MORE CONVENIENT FORUM**<br><br>**[Fed R. Civ. P. 12(b)(2), (3)]**<br><br>[Assigned to the Hon. Jacqueline H. Nguyen]<br><br>Date:      December 13, 2010<br>Time:     2:00 p.m.<br>Ctrm:    790, Los Angeles - Roybal |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMIS OR  ALTERNATIVELY, TO TRANSFER

# **TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................... 1

II.  STATEMENT OF FACTS ...........................................................3

    A.   Jurisdictional Contacts of Barrios and Archon ......................3

        1.   Barrios ........................................................3

        2.   Archon ........................................................3

    B.   The Consulting Agreement between Archon and Plaintiff .................4

    C.   Plaintiff's Work under the Consulting Agreement ............................7

    D.   The Archon Contracts toward which Plaintiff Purportedly
        Worked ........................................................8

    E.   Plaintiff's Work in New Orleans and the 60-Day Loan
        Agreement ........................................................8

III. ARGUMENT.............................................................................11

    A.   The Court Lacks Personal Jurisdiction over the
        Archon Defendants ...........................................................11

        1.   Plaintiff Bears the Burden of Proving the
            Archon Defendants Have Sufficient Contacts with
            California Such that the Exercise of
            Jurisdiction Would be Reasonable ............................................11

        2.   The Archon Defendant Lack Sufficient "Minimum
            Contacts" with California to Confer Jurisdiction on
            this Court ........................................................12

            a.   General Jurisdiction Does Not Exist Over
                the Archon Defendants ....................................13

            b.   Specific Jurisdiction Does Not Exist Over
                 the Archon Defendants ....................................15

-ii-

       i.    Barrios has done nothing Purposefully to Avail Himself of the Benefits and Protections of California and Therefore Should be Dismissed from this Action ...............17

      ii.    Archon has has done nothing Purposefully to Avail Itself of the Benefits and Protections of California and Therefore Should be Dismissed from this Action ...............17

    iii.    Exercising Personal Jurisdiction over the Archon Defendants Would Offen Traditional Notions of Fair Play and Substantial Justice ...............19

B.    Alternatively, the Court Should Transfer the Claims Against the Archon Defendants to Louisiana, Which is an Available and More Convenient Forum ........................21

IV.    CONCLUSION ........................................................................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

# TABLE OF AUTHORITIES

## CASES

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
   1 F.3d 848, 851 (9th Cir. 1993) ....................................................12

*Asahi Metal Ind. Co. v. Superior Court of Calif., Solano Cty.*,
   480 U.S. 102, 113 (1987) .........................................................20

*Bauman v. Dainlerchrysler AG*,
   2005 WL 3157472, *8 (N.D. Cal. 2005) ....................................13

*Brayton Purcell, LLP v. Recordon & Recordon*,
   606 F.3d 1124, 1129 (9th Cir. 2010) .......................................19

*Cubbage v. Merchent*,
   744 F.2d 665, 667 (9th Cir. 1984) ...........................................11

*DVI, Inc. v. Superior Court*,
   104 Cal. App. 4th 1080, 1095 (Cal. App. 4 Cir. 2002) ................15

*Fields v. Sedgwick Associated Risks, Ltd.*,
   796 F.2d 299, 301 (9th Cir. 1986) .......................................11, 15

*Fisher v. Las Vegas Hilton Corp.*,
   No. 01-16278, 47 F. App'x 824, 2002 WL 31085332
   (9th Cir. Sept. 18, 2002) .........................................................22

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325, 1330 (9th Cir. 1984) ....................................11, 14

*Gray Line Tours v. Reynolds Elec. & Eng. Co.*,
   193 Cal. App 3d 190, 193-95 (Cal. App. 2d Cir. 1987) ..............15

*Hatch v. Reliance Ins. Co.*,
   758 F.2d 409, 414 (9th Cir. 1985) ...........................................21

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
   466 U.S. 408, 414 (1983) .....................................................12, 13

-iv-

*In re Damodar Bulk Carriers, Ltd.,*
    903 F.2d 675, 679 (9th Cir. 1990) ................................................................11

*In re Eden Needleman*
    BK No. 2:09-bk-15218-BR, before the United States
    Bankruptcy Court for the Central District of California,
    Los Angeles Division ..............................................................................9

*International Shoe Co. v. Washington,*
    326 U.S. 310, 316 (1945) ...................................................................12, 14

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495, 498-499 (9th Cir. 2000) ...............................................21

*Martin v. D-Wave Sys., Inc.,*
    2009 WL 4572742, *2 (N.D. Cal. 2009) ............................................15

*Omeluk v. Langsten Slip & Batbyggeri A/S,*
    52 F.3d 267, 270 (9th Cir. 1995) .............................................13, 14, 16, 18

*Pacific Car and Foundry Co. v. Pence,*
    403 F.2d 949 (9th Cir. 1968) ...............................................................22

*Sher v. Johnson,*
    911 F.2d 1357, 1365 (9th Cir. 1990) .....................................14, 15, 17

*Stewart Org. v. Ricoh Corp.*
    487 U.S. 22, 29 (1988) .......................................................................21

*Terracom v. Valley Nat'l Bank,*
    49 F.3d 555, 560-62 (9th Cir. 1995) ..................................................19

*Thrift Funds of Baton Rouge, Inc. v. Jones,*
    274 So. 2d 150 (La. 1973)...................................................................20

*Z-Rock Comms. Corp. v. William A. Exline, Inc.,*
    No. 03-02436, 2004 WL 1771569, *18
    (N.D. Cal. Aug. 6, 2004) ....................................................................21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

1

**STATUTES/RULES/OTHER SOURCES**

28 U.S.C. § 1404 ....................................................................21, 22

28 U.S.C. § 1404(a) (West 2010) ...........................................21, 22

CAL. CIV. PROC. CODE § 410.10 ....................................................11

Section 1404(a) of Title 28 of the United States Code ...........................21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMIS OR, ALTERNATIVELY, TO TRANSFER

1   Defendants ARCHON INFORMATION SYSTEMS, L.L.C. ("Archon") and

2
3   BRYAN P. BARRIOS ("Barrios") (collectively the "Archon Defendants") submit

4   this Memorandum of Points and Authorities in support of their Motion to Dismiss

5   for Lack of Personal Jurisdiction or, Alternatively, to Transfer to a More Convenient

6
7   Forum.  The events underlying this suit are wholly unrelated to California, thereby

8   precluding this Court from exercising jurisdiction over the Archon Defendants and,

9   regardless, making California an inconvenient forum.  California and its courts have

10
11  no interest, moreover, in the claims before this Court or in resolving those claims.

12  Rather, maintenance of this action in this Court will only add to the congestion of

13  the federal courts of California.

14
    **I.      INTRODUCTION**
15
16      This lawsuit arises from two separate transactions involving Plaintiff EDEN

17  RUIZ ARI ("Plaintiff"): a consulting agreement between Plaintiff and Archon and a

18
19  loan agreement between Plaintiff and Barrios.   Archon provides innovative tax-

20  collection solutions to all levels of government via Archon's tax-collection services,

21  such as certified mailings of tax sale notices and software packages that facilitate tax

22
23  collection.  *See* Declaration of Bryan P. Barrios ("Dec. of Barrios") at ¶ 2.  Barrios

24  is the Chief Executive Officer ("CEO") and a member of Archon.   *Id.* at ¶ 1.

25      Plaintiff sought and created a business opportunity in New Orleans, Louisiana

26
27  by contacting Barrios in his capacity as the CEO of Archon, a Delaware limited

28  liability company with its principal and only place of business in New Orleans.  This

-1-

business opportunity developed into the consulting agreement upon which Plaintiff has filed suit. *See* Complaint at ¶¶ 7-8 and Ex. 1. While working as a consultant for Archon in New Orleans, Plaintiff again sought out Barrios for the personal loan agreement that she proposed and upon which she has also filed suit. *See id.* at ¶¶ 11-13 and Ex. 2.

The Court should dismiss Plaintiff's suit against the Archon Defendants or transfer it to the United States District Court for the Eastern District of Louisiana because:

- The Court lacks general jurisdiction over the Archon Defendants because:

  o Archon is a Delaware company with no offices, employees, officers, or real property in California and lacks any substantial contacts with California whatsoever; and

  o Barrios likewise owns no real or personal property in California and has never been to California, except for a two-day stay in his capacity as the CEO of Archon, which is unrelated to this case;

- The Court also lacks specific jurisdiction over the Archon Defendants because this lawsuit arises out of, and relates directly to, two separate transactions, a loan agreement between Plaintiff and Barrios and a consulting agreement between Plaintiff and Archon:

  o Barrios did not purposefully seek out the benefits or protections of the State of California by signing the personal loan agreement in New Orleans, which Plaintiff herself proposed and executed in New Orleans; and

  o Archon did not seek out Plaintiff as a consultant in California, and the consulting agreement under which she has sued does not even contemplate Plaintiff contacting anyone other than Archon's members and employees;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER

- Regardless, exercising personal jurisdiction over the Archon Defendants would be patently unfair because California has no connection or interest in this suit other than the fact that Plaintiff is in California; and

- Alternatively, under the doctrine of *forum non conveniens*, the United States District Court for the Eastern District of Louisiana is an adequate alternative forum that would be more convenient for the trial of this matter because the witnesses, including third-party witnesses, and documents are located there.

## II.    STATEMENT OF FACTS

### A.    Jurisdictional Contacts of Barrios and Archon

#### 1.    Barrios

Barrios resides in Thibodeaux, Louisiana and does not work or reside in California.  Barrios does not lease or own real property in California.  Barrios does not maintain a bank account or other personal property in California.  Barrios has visited California only one time.  On June 2-3, 2009, Barrios attended the 2009 Conference for the California Association of County Treasurers and Tax Collectors ("CACTTC Conference") in Yosemite National Park, California, on behalf of Archon. *See* Dec. of Barrios at ¶¶ 6-9.  Neither the conference nor that visit relate to this case.

#### 2.    Archon

Archon is a Delaware limited liability company, which maintains its principal and only place of business in New Orleans, Louisiana.  Archon provides innovative tax-collection solutions to all levels of government via Archon's tax-collection

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER

services, such as certified mailings of tax sale notices and software packages that facilitate tax collection. *See* Dec. of Barrios at ¶¶ 2, 10.

Archon's members and employees, including Barrios, are residents of Louisiana. Archon does not lease or own real property in California, nor does it maintain an office in California. Archon maintains no business records in California because its records are kept in New Orleans. Archon has no bank accounts in California. Archon has not paid income or property taxes in California, nor is it subject to such California taxes. Archon maintains a passive website and does not direct its online advertising toward California. *See* Dec. of Barrios at ¶¶ 11-16, 19.

Archon is licensed to conduct business in California and has an agent for service of process in California. Nevertheless, Archon has not held a meeting in California, and derives no revenue from California. Archon has not even contracted with a California citizen other than Plaintiff. Archon has a contract with a mailing service provider, Walz Postal Solutions, Inc. ("Walz"), a Nevada corporation that has offices in Temecula, California. Archon pays Walz to mail notices of tax sales to the counties and Louisiana parishes where Archon does business. Archon has not asked Walz to mail notices or other materials to California citizens because Archon has never had a California client. *See* Dec. of Barrios at ¶¶ 10-19.

**B.    The Consulting Agreement between Archon and Plaintiff**

Plaintiff solicited her consulting relationship with Archon by contacting Barrios via email, at his Archon email address, in August 2009. In short, Plaintiff

-4-

offered to improve Archon's existing Louisiana business relationships, help facilitate new Louisiana and other business relationships, and improve the organizational skill base of Archon's members and employees. To do so, Plaintiff proposed to conduct face-to-face "coaching sessions" with Archon employees in New Orleans. *See* Dec. of Barrios at ¶ 20.

In connection with Plaintiff's solicitation, she requested information from Barrios relating to Archon's clients, potential clients, and the revenues Archon might achieve by contracting with these clients. On September 20, 2009, Barrios responded to Plaintiff's information requests by emailing her a list of the government entities with which Archon hoped to contract: 65 Louisiana parishes and two counties in the state of Washington. Notably, the list did not include any California municipality. On September 24, 2009, Barrios followed up his email response by forwarding Plaintiff a map of Louisiana parishes. *Id.* at ¶¶ 20-22.

On September 27, 2009, Plaintiff emailed Barrios proposed terms for a consulting agreement between her and Archon, which included a discussion of her ability to travel to Archon's offices in New Orleans. On October 5, 2009, after consulting with the other members of Archon about Plaintiff's business proposal, Barrios emailed Plaintiff a draft consulting agreement for review and signature ("Draft Agreement"). Although Plaintiff failed to sign the Draft Agreement, she proceeded to perform the work orders subsequently emailed to her by Barrios pursuant to the agreement or, at least, purported to do so. *Id.* at ¶¶ 23-25.

-5-

On April 28, 2010, Barrios emailed Plaintiff a revised Draft Agreement for signature. Id. at ¶ 66. The revised Draft Agreement more accurately reflected the work Plaintiff had performed and was to perform for Archon as follows:

> 2.  [Plaintiff] shall advise and assist [Archon] according to [Plaintiff's] own means and methods of work at such times at a mutually convenient for [Plaintiff] and CEO. [Plaintiff] shall utilize her knowledge, expertise, and independent judgment in providing assistance and advice to the CEO in the areas requested on behalf of [Archon] from time to time, which areas shall include, without limitation, the following: client relationship building; client and new income development; personal influence and effectiveness; effective networking; tactical negotiation; managing change; opportunity leveraging; positive thinking and reinforcement; effective and consistent decision making; communication improvement; and stress management. [Plaintiff's] role is specifically to work with the CEO to help develop client relations & bring in revenue.

See Complaint at Ex. 1.

The revised Draft Agreement also contained the following choice-of-law provision:

> 9.  The validity, construction, interpretation and enforceability of this Agreement shall be determined and governed by the laws of the State of Louisiana without regard to the principles of conflicts of law.

Id.

On April 30, 2010, Plaintiff advised Barrios via email that she would sign the revised Draft Agreement. The same day, Barrios confirmed, via email to Plaintiff, that they had reached an agreement as to the provisions of the Draft Agreement and that he would forward it to the members of Archon for final approval. The revised Draft Agreement became the Consulting Agreement under which Plaintiff has filed

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

suit.  *See* Dec. of Barrios at ¶¶ 67-68; *see also* Compl. at Ex. 1.  On May 7, 2010, Barrios emailed Plaintiff the Consulting Agreement for her signature.  On May 9, 2010, Plaintiff signed the Consulting Agreement and faxed it to Archon.  Archon has inspected its records and has determined, however, that it no longer has a signed copy of the Consulting Agreement.  *See* Dec. of Barrios at ¶¶ 69-70.

On August 31, 2010, the Consulting Agreement terminated pursuant to the follows terms:

> 1.    For the period (the "<u>Consultation Period</u>") commencing on the 1st day of September 2009 and ending on the 31st day of August 2010, [Plaintiff] shall provide the services as described herein by making herself reasonably available to perform the services described herein when requested by [Archon's] Chief Executive Officer.  This contract may be extended in one year increments by mutual agreement of the parties.

*See* Complaint at Ex. 1.

## C.    Plaintiff's Work under the Consulting Agreement

In accord with Paragraph 2 of the Consulting Agreement, Barrios emailed Plaintiff work orders asking for assistance on particular projects in the areas described in the agreement.  Barrios sent only 13 work orders to Plaintiff.  The work orders largely related to clients and potential clients in Louisiana, and only two of the work orders related, in any way, to California.  Neither of those two work orders required Plaintiff to contact a California citizen.  Neither work order resulted in a contract for Archon, and neither can be the basis for Plaintiff's claim under the Consulting Agreement because the Consulting Agreement provides that Plaintiff

-7-

would be paid only "a fee in the amount of 10% multiplied by the <u>net revenue</u> <u>realized by</u> [Archon] under any and all contracts with the parishes, counties and/or clients in which [Archon] sought direct assistance and services of [Plaintiff]." *See* Dec. of Barrios at ¶¶ 5, 25-26, 31, 34, 38, 46, 50, 55 (emphasis added); *see also* Complaint at Ex. 1.

### D.     The Archon Contracts toward which Plaintiff Purportedly Worked

Since the commencement of the "Consulting Period" of the Consulting Agreement on September 1, 2009, Archon has secured only the following nine contracts: Caddo Parish Sheriff, St. Mary Parish Sheriff, Lafourche Parish Sheriff, St. Landry Parish Government, City of Patterson, Louisiana, Iberia Parish Government, City of Jeanerette, Louisiana, Village of Loreauville, Louisiana, and St. Mary Parish Government.   Every one of these contracts is with a Louisiana governmental entity.   *See* Dec. of Barrios at ¶¶ 29, 35, 48,-49, 54, 59, 61-63, 65. Plaintiff's claims under the Consulting Agreement are, consequently, for monies allegedly owed to her based upon Archon's receipt of revenue from these Louisiana contracts.  *See* Complaint at Ex. 1.

### E.     Plaintiff's Work in New Orleans and the 60-Day Loan Agreement

In accord with Plaintiff's business proposal to Archon, Plaintiff traveled to New Orleans for coaching and consulting work with Archon on two occasions: from November 7, 2009, until approximately December 13, 2009, and from December 18, 2009 through December 27, 2009.  *Id.* at ¶¶ 20-23, 32.  On November 23, 2009,

-8-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

while in Louisiana, Plaintiff asked Barrios to co-sign a residential loan application so that she could prevent the sale of her home in the bankruptcy proceeding styled *In re Eden Needleman*, BK No. 2:09-bk-15218-BR, before the United States Bankruptcy Court for the Central District of California, Los Angeles Division. Barrios did co-sign the residential loan application at his office in New Orleans, but Plaintiff failed to purchase her home in the bankruptcy proceeding. Barrios has never owned real property in California. *Id.* at ¶36.

On November 30, 2009, while in New Orleans, Plaintiff emailed Barrios an appraisal of her home. Plaintiff also asked Barrios for a $60,000 collateral-free loan by December 1, 2009. Plaintiff proposed to pay Barrios $90,000 for the loan. Barrios, in turn, approached Blake Jones, his business partner and a fellow member of Archon, for a $60,000 loan with the understanding that $90,000 would be paid within 60 days of the loan disbursement. On or about November 30, 2009, Plaintiff signed a loan agreement entitled "60-Day Loan Agreement" in New Orleans containing the following terms:

> The following 60-day loan agreement (Agreement) is entered into on this 5th day of December 2009, by and between Bryan P. Barrios (Barrios) and Eden R. Ari (Ari.)
>
> Barrios hereby loans Ari the sum of sixty thousand dollars ($60,000), repayable within 60 days from the date of this Agreement. The repayment amount shall be in the amount of ninety thousand dollars ($90,000), and shall be due no later that the 5th day of February 2009.

-9-

On December 1, 2009, Plaintiff emailed Barrios her bank account number and confirmed that she would pay $90,000 for the $60,000 loan as she had proposed. On December 1, 2009, Mr. Jones had $60,000 deposited in Barrios's Regions bank account in Louisiana. *See* Dec. of Barrios at ¶¶ 39-42.

The 60-Day Loan Agreement funds were disbursed to Plaintiff on several dates in December 2009. All of the funds were transferred to Plaintiff from Barrios's Louisiana bank account. Some of the funds were spent by Plaintiff while she was still in New Orleans. *See* Dec. of Barrios at ¶¶ 43-45, 47, 51-53.

On January 15, 2010, Barrios emailed Plaintiff a second copy of the loan agreement for her signature because he could not locate the original signed document she left in his New Orleans office. Plaintiff responded by confirming that she had already signed the loan agreement during her stay in New Orleans and that she had left it in Barrios's office. On January 23, 2010, Plaintiff informed Barrios, however, that she would likely be unable to repay her loan by February 5, 2010 and that "worst case scenario, I will pay . . . the $90K from proceeds from the parish work with Archon as that may come in sooner than the refi money in hand from the [bankruptcy court]." *See* Dec. of Barrios at ¶¶ 56-57.

On February 5, 2010, Plaintiff's loan became due and immediately payable in full, but Plaintiff made no payment on that date. On February 17, 2010, Barrios emailed Plaintiff to ask about her ability to repay the loan. Plaintiff never made any direct payments on the loan. Consequently, as Plaintiff had previously suggested,

-10-

Archon deducted the loan re-payment from her earnings under the Consulting Agreement and paid her the remaining earnings.  *See* Dec. of Barrios at ¶¶ 58, 60.

III.   **ARGUMENT**

    A.   **The Court Lacks Personal Jurisdiction over the Archon Defendants.**

        1.   **Plaintiff Bears the Burden of Proving the Archon Defendants Have Sufficient Contacts with California Such That the Exercise of Jurisdiction Would Be Reasonable.**

Plaintiff, as the party seeking to invoke this Court's jurisdiction, must establish that the Court has personal jurisdiction over the Archon Defendants. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir. 1984).  For a federal court to exercise personal jurisdiction over foreign defendants, such as the Archon Defendants, two requirements must be satisfied.  First, the foreign defendants must be amenable to service of process under the forum state's long-arm statute. Second, the court's exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment.  *In re Damodar Bulk Carriers, Ltd.*, 903 F.2d 675, 679 (9th Cir. 1990).  Because California's long-arm statute, CAL. CIV. PROC. CODE § 410.10, has been interpreted to confer jurisdiction coextensive with the limits of due process, these two tests merge into a single due process test.  *See Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984).

The Supreme Court of the United States has bifurcated this due process analysis further into two parts.  Under the Supreme Court's test, a court's exercise of *in personam* jurisdiction over a foreign defendant satisfies the requirements of due process *only* if (1) the defendant has established "minimum contacts" with the forum and (2) maintenance of the suit would not offend "traditional notions of fair play and substantial justice."  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1983) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir. 1993).  Here, neither Archon nor Barrios has sufficient contacts with California to justify the assertion of this Court's *in personam* jurisdiction over them.  Any exercise of such jurisdiction would therefore be unreasonable and beyond the parameters of the Due Process Clause.

### 2. The Archon Defendants Lack Sufficient "Minimum Contacts" With California to Confer Jurisdiction on This Court.

When *in personam* jurisdiction is asserted over a nonresident defendant, due process requires the plaintiff to show initially that the defendant has purposely established "minimum contacts" with the forum.  *Helicopteros*, 466 U.S. at 414.  A party wishing to invoke the court's jurisdiction may satisfy the Supreme Court's requirement of minimum contacts by establishing either that the court has "general" or "specific" jurisdiction over the foreign defendant.  A court may exercise general jurisdiction over a nonresident defendant if the defendant's activities in the forum

-12-

state are "substantial" or "continuous and systematic" whether or not they give rise to the plaintiff's action. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). Specific jurisdiction exists, on the other hand, only when the cause of action the plaintiff asserts arises out of, or relates to, the nonresident defendant's contacts with the forum state. *Helicopteros*, 466 U.S. at 414 & n.8; *Omeluk*, 52 F.3d at 270.

a. <strong>General Jurisdiction Does Not Exist Over the Archon Defendants.</strong>

Neither Archon nor Barrios has systematic and continuous contacts with California. Barrios resides in Thibodaux, Louisiana and does not work or reside in California. Barrios does not own or lease any property in California. Barrios also does not maintain any bank accounts or own any personal property in California. The loan application Barrios co-signed with Plaintiff, from his office in New Orleans, did not result in the purchase of any property in California. *See supra* at § II.

Barrios has visited California only one time. On June 2-3, 2009, Barrios attended the 2009 Conference for the California Association of County Treasurers and Tax Collectors ("CACTTC Conference") in Yosemite National Park, California, on behalf of Archon. *See id.* A single trip to California is not enough, however, to give this Court general jurisdiction over Barrios. *See Bauman v. Dainlerchrysler AG*, 2005 WL 3157472, *8 (N.D. Cal. 2005) (*citing Helicopteros* 466 U.S. at 416).

1    Archon is a Delaware limited liability company and maintains its principal

2  and only place of business in New Orleans.   All of Archon's members and

3  employees, including Barrios, are residents of Louisiana.   Archon does not have an

4

5  office in California and has never had an office there.   Likewise, Archon does not

6  own or lease any property in California and does not maintain any business records

7  or bank accounts in California.   Archon has not paid income or property taxes in

8  California, nor is it subject to such California taxes.   Although Archon maintains a

9

10  passive website, it does not direct its online advertising toward California.   Archon

11  has not held a meeting in California and derives no revenue from California.   As the

12  Ninth Circuit has held, the "lack of a regular place of business in [the forum state] is

13

14  significant, and is not overcome by a few visits." *Omeluk*, 52 F.3d at 270. *See also*

15  *Gates*, 743 F.2d at 1331 (business trips and solicitation of distributorship agreement

16  in forum did not establish general jurisdiction).

17

18    Moreover, any contacts between Plaintiff and Archon, which the Archon

19  Defendants dispute establish jurisdiction, cannot be imputed to Barrios.   The Ninth

20  Circuit has held that the "requirements of *International Shoe* . . . must be met as to

21

22  each defendant." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).   A

23  partnership's contacts with a forum do not establish jurisdiction over individual

24  partners.   Rather, a "district court has jurisdiction over only those individual partners

25

26  who personally established the requisite minimum contacts with California." *Id.* at

27  1366; *see also Z-Rock Comms. Corp. v. William A. Exline, Inc.*, No. 03-02436, 2004

28

-14-

WL 1771569, *18 (N.D. Cal. Aug. 6, 2004) (extending *Sher* to members of limited liability companies and holding that "[f]or purposes of jurisdiction, federal courts have treated the citizenship of limited liability corporations like partnerships").

Archon is licensed to conduct business in California and has an agent for service of process in California, but California state courts and the United States District Court for the Northern District of California have "declined to find consent jurisdiction based on mere appointment of a California agent for service of process." *Martin v. D-Wave Sys., Inc.*, 2009 WL 4572742, *2 (N.D. Cal. 2009); *see also DVI, Inc. v. Superior Court*, 104 Cal. App. 4th 1080, 1095 (Cal. App. 4 Cir. 2002) (finding no personal jurisdiction even though the defendant company registered to do business in California, maintained a California agent for service of process, and had two officers residing in California); *Gray Line Tours v. Reynolds Elec. & Eng. Co.*, 193 Cal. App 3d 190, 193-95 (Cal. App. 2d Cir. 1987 (holding that designation of an agent for service of process and qualification to do business in California alone do not constitute grounds for general jurisdiction). Therefore, neither Archon nor Barrios has "substantial" or "continuous and systematic" contacts with California that rise to the high level required to sustain general jurisdiction. *See Fields*, 796 F.2d at 301.

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER

### b.   Specific Jurisdiction Does Not Exist Over the Archon Defendants.

The Ninth Circuit applies a three-part test to determine whether a court may exercise specific jurisdiction:

1.   The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2.   The claim must be one which arises out of or results from the defendant's forum-related activities; and

3.   Exercise of jurisdiction must be reasonable.

*Omeluk*, 52 F.3d at 270.   If any of these three requirements is missing, a court's assertion of jurisdiction would deprive the defendant of due process. *Id.*

In the present case, Plaintiff asserts independent claims based upon two distinct transactions.   First, Plaintiff has filed a damages claim against Archon arguing that Archon failed to compensate her fully under the Consulting Agreement. Second, Plaintiff has filed a rescission claim against Barrios arguing that the 60-Day Loan Agreement charged her a "usurious" interest rate.   Plaintiff has the burden, therefore, to show that Barrios purposefully availed himself of the benefits and protections of the State of California by executing the 60-Day Loan Agreement in Louisiana.   Plaintiff must also show that Archon purposefully availed itself of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

1  benefits and protections of the State of California by executing the Consulting

2  Agreement that contemplates no contacts with California.

3

4        **i.**      **Barrios has done nothing purposefully to avail himself of the benefits and protections of California and therefore should be dismissed from this action.**

5

6        Plaintiff's 60-Day Loan Agreement claim bears no connection to California.

7

8  The 60-Day Loan Agreement was a personal loan from Barrios, a Louisiana citizen,

9  to Plaintiff.   Plaintiff proposed the terms of the 60-Day Loan Agreement in

10 Louisiana, and Plaintiff signed the 60-Day Loan Agreement in Louisiana.   The 60-

11 Day Loan Agreement funds came from banks in Louisiana.   Plaintiff even spent 60-

12 Day Loan Agreement funds while she was in Louisiana.   In sum, Barrios availed

13

14 himself of nothing in California by executing the 60-Day Loan Agreement (no

15 California privileges and no California benefits), and, therefore, no specific

16

17 jurisdiction exists over him in respect to Plaintiff's 60-Day Loan Agreement claims.

18 Under *Sher*, moreover, any contacts of Archon from which Plaintiff's claims arise

19

20 cannot be imputed to Barrios.[1]   Accordingly, no specific jurisdiction exists over

21 Barrios in respect to Plaintiff's claim regarding the 60-Day Loan Agreement.

22 ///

23

24

25

26 [1]   Barrios has never been to California, other than his two-day stay in June 2009 as a representative of Archon at the CACTTC conference.   Plaintiff's claims do not

27 arise from the CACTTC Convention.   Barrios's one trip to California is irrelevant to a specific-jurisdiction analysis of Plaintiff's claims against Barrios, and Plaintiff

28 cannot satisfy the second part of the Ninth Circuit's test through this contact.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

  **ii.**  **Archon has done nothing purposefully to avail itself of the benefits and protections of California and therefore should be dismissed from this action.**

  Archon did not seek out Plaintiff to do work for it.   Plaintiff sought out Archon through Barrios, a Louisiana resident and CEO of a company with its principal and only place of business in New Orleans.   Plaintiff proposed the terms of the Consulting Agreement to avail herself of this business opportunity she created with Archon.   By executing the Consulting Agreement, moreover, Plaintiff agreed that the laws of Louisiana would govern her relationship with Archon.

  The work orders that directed Plaintiff's services under the Consulting Agreement were principally directed at Louisiana.   Of the 13 work orders sent to Plaintiff, only two related to California.   Neither of these two work orders required Plaintiff to contact California residents, and neither resulted in a contract or new revenue for Archon.   These work orders, therefore, do not survive the second prong of the specific jurisdiction analysis as they do not give rise to Plaintiff's claim against Archon. *See Omeluk*, 52 F.3d at 270.

  The only contracts Archon signed from the time Plaintiff's performance under the Consulting Agreement commenced until it terminated were Louisiana contracts, meaning Plaintiff directed her activities to Louisiana.   Archon did not direct its activities to California.   To the extent Plaintiff's claim under the Consulting Agreement exists, it must relate to these Louisiana contracts and therefore has no relation to California.   The very methodology by which Plaintiff performed under

-18-

the Consulting Agreement did not require her to communicate with anyone other than Archon, much less a resident of California. The only direct contacts contemplated for Plaintiff under the Consulting Agreement were in relation to her services as a coach to Archon's members and employees, all of whom were located in Louisiana. Hence, Plaintiff traveled to New Orleans to work at Archon's office.

Exercising jurisdiction over Archon for these claims would be unreasonable. Indeed, the Ninth Circuit has rejected claims of specific jurisdiction in cases in which the cause of action was arguably much more closely related to California than here. *See, e.g.*, *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560-62 (9th Cir. 1995) (holding no specific jurisdiction over nonresident bank that had allegedly negligently certified surety for construction project in California). The Ninth Circuit has also rejected claims of specific jurisdiction premised upon the mere existence of a passive website, like Archon's. *Brayton Purcell, LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (holding "[i]t is beyond dispute in this circuit that maintenance of a passive website alone cannot satisfy the express aiming prong").

      **iii.**    **Exercising Personal Jurisdiction Over the Archon Defendants Would Offend Traditional Notions of Fair Play and Substantial Justice.**

Even if the Archon Defendants had sufficient minimum contacts with California, which they do not, the exercise of personal jurisdiction over the Archon Defendants would still not satisfy the due process requirements because it would be

-19-

unfair and unreasonable.  In determining whether or not the assertion of personal jurisdiction is reasonable, a court must consider "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interests of the several states." *Asahi Metal Ind. Co. v. Superior Court of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987).  These factors plainly demonstrate the unreasonableness of exercising jurisdiction over the Archon Defendants.

The burden on Barrios, a Louisiana resident, and on Archon, a company with its principal and only place of business in New Orleans, of defending an action in this Court would be great.  Barrios and other representatives of Archon could be required to travel to California for discovery, hearings and trial.  This travel would increase the Archon Defendants' time away from their business and the cost of defending themselves.  Louisiana would be a much more convenient and appropriate forum in which to litigate this matter because it is the location of all of the witnesses except Plaintiff, the relevant documents, and all of the parties except Plaintiff.  *See infra* at § III(B).

In contrast, California has little, *if any*, interest in the Court's assertion of jurisdiction over the Archon Defendants in this forum.  Louisiana law governs the Consulting Agreement, not California law.  Louisiana law will also govern the 60-Day Loan Agreement, which was confected entirely in Louisiana.  Louisiana has its own usury laws that would potentially apply to Plaintiff's claims under the 60-Day Loan Agreement and a greater interest in its public policy, which is embodied in the

1   laws, enforced in respect of that Louisiana contract. *See Thrift Funds of Baton*

2   *Rouge, Inc. v.* Jones, 274 So. 2d 150 (La. 1973) (recognizing Louisiana's public

3

4   policy against usurious interest rates). Accordingly, this Court should reject

5   jurisdiction over the Archon Defendants as unfair regardless of whether it

6

7   determines that they have sufficient minimum contacts with California or not and

8   dismiss this suit.

9      **B.      Alternatively, the Court Should Transfer the Claims Against the**
           **Archon Defendants to Louisiana, Which Is an Available and More**
10          **Convenient Forum.**

11

12      Section 1404(a) of Title 28 of the United States Code provides that "[f]or the

13   convenience of parties and witnesses, in the interest of justice, a district court may

14

15   transfer any civil action to any other district or division where it might have been

16   brought." 28 U.S.C. § 1404(a) (West 2010). Transfer is proper under the statute if

17   the suit could have brought in the transferee district and "the convenience of parties

18

19   and witnesses in the interest of justice" favor transfer. *Hatch v. Reliance Ins. Co.,*

20   758 F.2d 409, 414 (9th Cir. 1985). Whether a transfer is appropriate depends upon

21   "an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones*

22

23   *v. GNC Franchising, Inc.,* 211 F.3d 495, 498-499 (9th Cir. 2000) (citing *Stewart*

24   *Org. v. Ricoh Corp.* 487 U.S. 22, 29 (1988)).

25      In determining whether to transfer a case to another federal judicial district, a

26

27   court should consider the following factors:

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6)      the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses, and (8) the ease of access to sources of proof.

*Id.* Courts may also consider the forum state's relevant public policy. *Id.* at 499.

In *Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968), for example, the court granted a motion for change of venue under 28 U.S.C. § 1404. The court reviewed the facts and found that many of the defendant's witnesses were not located in the forum state and would have had to travel there, the plaintiff's witnesses and evidence were not located in the forum state, the claim of injury had nothing to do with the forum state, and the defendant did not maintain an office in the forum state. *Id.* at 955. The only factor that favored keeping the litigation in the forum state was the fact that the plaintiff had chosen to sue there. The Ninth Circuit held that the possibility that the plaintiff would suffer an inconvenience in having to sue in a different state was not enough to keep the case in the forum state. *Id.*

Similarly, in *Fisher v. Las Vegas Hilton Corp.*, No. 01-16278, 47 F. App'x 824, 2002 WL 31085332 (9th Cir. Sept. 18, 2002), the Ninth Circuit affirmed the transfer of a case under § 1404(a). The defendants demonstrated that at least twelve material witnesses lived in the transferee forum and the plaintiff's witnesses in the forum state had no knowledge of the issues in dispute. *Id.* at *1. The *Fisher* Court

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

held, therefore, that "the convenience of the parties, the interests of justice, and judicial economy" justified the transfer of the case. *Id.*

For the same reasons, and for the reasons discussed more fully *supra* in § III(B)(iii), this matter should be transferred to the United States District Court for the Eastern District of Louisiana if it is not dismissed. Louisiana is obviously an available forum in which Plaintiff could have brought suit against the Archon Defendants. All witnesses and parties, but for Plaintiff, reside in Louisiana. These witnesses include employees of Archon other than Barrios, such as Susan Beloat, Damon Frasier, Stephanie Coates, Jennifer DiBuono, and Chad Lee, as well as potential third-party witnesses, such as Mr. Jones and employees of various Louisiana municipalities who were involved in negotiating Archon's Louisiana contracts. The Archon Defendants' offices and records are also in New Orleans, including Archon's records of contract negotiations with the Louisiana governmental entities to which Plaintiff's claim under the Consulting Agreement relates. Plaintiff's claims likewise have nothing to do with the State of California. Indeed, all of the contracts on which Plaintiff's claims to have worked and for which she seeks payment are contracts Archon signed with Louisiana municipalities or companies.

The only factor that favors keeping the instant litigation in California is the fact that the plaintiff has chosen to sue there, but, as addressed above, the Ninth Circuit has held that the possibility that the plaintiff would suffer an inconvenience

-23-

in having to sue in a different state is not enough to keep the case in California. Plaintiff's prior actions have demonstrated, however, that, in contrast to the burden litigating in California would impose on the Archon Defendants, litigating in Louisiana would not impose a similar or comparable burden on Plaintiff. Plaintiff traveled to Louisiana throughout the term of the Consulting Agreement and spent long periods of time in Louisiana. Accordingly, Louisiana is a much more convenient forum, and this Court should transfer this suit to the United States District Court for the Eastern District of Louisiana.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Archon Defendants respectfully request that this Court dismiss the claims against them for lack of personal jurisdiction. Alternatively, the Archon Defendants respectfully ask that the Court transfer this action to the United States District Court for the Eastern District of Louisiana, which is a more convenient forum for the litigation of any remaining claims asserted by Plaintiffs.

Dated: November 4, 2010

**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**

By: /s/  Joshua S. Force
Joshua S. Force (State Bar No. 176383)
909 Poydras Street, Twenty-Eighth Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
Email: jforce@shergarner.com

-24-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DUANE MORRIS LLP**

865 S. Figueroa Street, Suite 3100
Los Angeles, California 90017-5450
Telephone: 213-689-7400
Facsimile: 213-689-7401
Email: rrenner@duanemorris.com

ATTORNEYS      FOR      ARCHON
INFORMATION  SYSTEMS,  L.L.C.  AND
BRYAN P. BARRIOS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMIS OR ALTERNATIVELY TO TRANSFER

1

2 **PROOF OF SERVICE**
1013(A) CCP

3

4 STATE OF LOUISIANA    )
    )   ss.

5 PARISH OF ORLEANS    )

6

7     I am employed in the Parish of Orleans, State of Louisiana.  I am over the age of 18 and not a party to the within action.  My business address is: 909 Poydras Street, Floor 28, New Orleans, Louisiana, 70112.

8

9     On November 4, 2010, I served the following document described as:

10 **DEFENDANTS ARCHON INFORMATION SYSTEMS, LLC AND BRYAN P. BARRIOS'S MEMORANDUM OF POINTS AND AUTHORITIES IN**

11 **SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER TO A MORE**

12 **CONVENIENT FORUM** on counsel of record for Plaintiff, Eden Ruiz Ari, by

13 placing the same in the United States mail and addressed to Robert N. Haynes, Attorney at Law, 27475 Ynez Rd. 635, Temecula, CA 92591.  I also emailed this

14 document to counsel of record for Plaintiff at ray-haynes@hotmail.com.

15 <u>XX   **BY EMAIL**</u>

16 <u>XX   **BY MAIL**</u>
I caused such envelope to be deposited in the mail at New Orleans, Louisiana.  The

17 envelope was mailed with postage thereon fully prepaid.  I am readily familiar with

18 the firm's practice of collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the U.S. Postal Service on

19 that same day in the ordinary course of business.  I am aware that on motion of the

20 party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in the

21 affidavit.

22

23     Executed on November 4, 2010 at New Orleans, Louisiana.

24 <u>XX</u>  (STATE)    I declare under penalty of perjury under the laws of the State of Louisiana that the above is true and correct.

25

26 <u>Joshua S. Force</u>

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMIS OR  ALTERNATIVELY  TO TRANSFER